UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TROPLAND, LLC                                          CIVIL ACTION

VERSUS                                                 NO: 06-8657

UNITED STATES FIDELITY AND                             SECTION: "A" (4)
GUARANTY COMPANY, ET AL.

## ORDER AND REASONS

Before the Court is **Defendant's Motion for Partial Summary Judgment (Rec. Doc. 19)** filed by defendant United States Fidelity and Guaranty Company ("USF&G"). Plaintiff, Tropland, LLC, opposes the motion. The motion, set for hearing on January 28, 2008, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is **DENIED**.

### I.   BACKGROUND

The instant dispute arises out of damage to Plaintiff's shopping center as a result of Hurricane Katrina and its aftermath. (Petition ¶ 3). Plaintiff subsequently demolished the entire building and removed the debris from its property, even though some portions of the building were undamaged. (*Id.*) At the time relevant to this dispute, the property was insured by USF&G through Travelers.

The facts leading to Plaintiff's procurement of an insurance policy with USF&G are alleged

as follows. Zurich was the original insurer of the property. In 2002 Tropland contacted Hibernia Insurance Agency and requested property insurance for the shopping center in the amount of $650,000, the purchase price of the property. (Pla. Mem. in Opp. p. 2; Def. Repl. Mem. p. 1). Hibernia advised that Zurich required the property to be insured at replacement value. (Pla. Mem. in Opp. p. 2). Subsequently, the Hibernia agent sent an erroneous square footage amount of 15,900 to the insurer, although the correct square footage of the property was 23,376. (*Id.*) Utilizing the 15,900 square foot value, Zurich calculated the replacement value of Tropland's property at $1.1 million. (*Id.*) Tropland purchased insurance at this amount. (*Id.*)

Zurich did not renew the policy in 2003. Hibernia submitted an application for coverage to USF&G, supplying the same square footage and replacement cost values as in the Zurich policy. (Def. Repl. Mem. p. 2) (citing Pla. Exh. A, Affidavit of Wayne Swenson). Hibernia sent Tropland an insurance quote from USF&G which provided replacement cost coverage for the shopping center in the amount of $1.1 million; Tropland purchased property insurance based on that quotation. (*Id.*) (citing Pla. Exh. A, Swenson Affidavit). USF&G issued a policy of insurance to Plaintiff covering Tropland for the loss of its building, cost of demolition and debris removal, and business interruption, which was in full force and effect on the date of the hurricane. (Petition ¶ 4).

On August 29, 2005, a fire occurred at the shopping center. St. Paul declared it a total loss and paid Plaintiff just under $1.2 million. (Pla. Mem. in Opp. p. 3). Tropland alleges that it submitted a proof of claim to USF&G, seeking the cost of replacement of the building and the increased cost of demolition pursuant to the terms of the policy. (Petition ¶ 5). According to Plaintiff, USF&G denied Tropland's claim for replacement cost in the amount of $2,356,000.00,

arguing that the policy provided for a replacement value of only $1,187,131.10, after applying a 3% property value automatic increase.  (*Id.* at ¶ 6).  In addition, USF&G denied Plaintiff's claim for the increased demolition cost, contending that there were no undamaged portions of the building.  (*Id.*)

Plaintiff initiated the instant action on August 25, 2006, in the Civil District Court for the Parish of Orleans, alleging that due to the negligence of USF&G and Hibernia "in failing to adequately calculate the replacement cost of plaintiff's building, plaintiff was underinsured and will be left with insufficient funds to reconstruct its building."  (*Id.* at ¶ 8).  In addition, Plaintiff claims penalties and attorney's fees pursuant to La. R.S. 22:1220, due to USF&G's alleged arbitrary and capricious refusal to pay Plaintiff the full sum of $100,000.00 for the increased cost of demolition within the time specified by law.  (*Id.* at ¶ 10).

USF&G removed the action to this Court on October 19, 2006 on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), arguing that Tropland's claims against Hibernia are perempted by the terms of La. R.S. 9:5606 and that, as a result, Hibernia was improperly joined. (Notice of Removal, p. 2, 5).  On January 24, 2007, the Court denied Tropland's Motion to Remand (Rec. Doc. 3), finding that Plaintiff's claims against Hibernia are perempted and Hibernia's citizenship does not affect removal.  (Rec. Doc. 8).  As such, the case was properly removed pursuant to diversity jurisdiction because Plaintiff and USF&G are of diverse citizenship and the amount in controversy exceeds $75,000.  (*Id.*)

USF&G moves for partial summary judgment on the grounds that Travelers is not liable for claimed damages that exceed the limit of insurance provided in the insurance policy issued to Tropland.  USF&G contends that it is entitled to summary judgment on two grounds: (1) the

3

insurance policy issued to Tropland provides that the most USF&G will pay per loss is the limit of insurance shown in the *Property Coverage Part Declarations*; and (2) USF&G did not breach its contract with Tropland by failing to recalculate the replacement cost of the insured property, as the policy imposes no duty on the insurer to recalculate the replacement cost value of the insured's property.  (Def. Mem. in Supp. p. 1).

Tropland opposes the motion.  In arguing that summary judgment is not appropriate, Tropland contends that USF&G had a duty to alert the insured to the "measurement error" and to adjust the face amount of the policy to reflect the higher replacement cost estimate.  (Pla. Mem. in Opp. p. 1).  According to Tropland, USF&G's duties in this regard stem from its capacity as insurer and its capacity as agent (*Id.* at p. 4, 7).  Moreover, Tropland argues that a factual issue exists as to whether USF&G breached its duty to the insured.  (*Id.* at p. 10).

In reply, USF&G submits that no Louisiana court has held that an insurer has a duty to assist the insured in estimating the replacement cost of its building.  (Def. Repl. Mem. p. 5).  In addition, USF&G notes that it did not assume the duty of calculating the replacement cost of the insured's property.  (*Id.* at p. 7).  Responding to Plaintiff's allegation that USF&G had a duty to inform Tropland of the calculation discrepancy, USF&G argues that it learned of the square footage discrepancy after the 2005 policy renewed.  (*Id.* at p. 8).  Finally, USF&G charges that Tropland is a commercial property owner and is in the best position to know the value of its own property.  (*Id.*)

**II.    DISCUSSION**

        *A.    The Parties' Contentions*

            *1.    Plaintiff*

Tropland does not dispute the fact that the policy contains a building insurance limit of $1,166,990 with a property guard increase of 3%. Rather, Tropland cites Louisiana cases in which the courts found that the insurer acquired duties toward the client after a long relationship, during which time the insurer became familiar with the insured's business. (Pla. Mem. in Opp. p. 6). Tropland acknowledges that a long relationship is not present here. However, Tropland argues that "it is not asking too much of [USF&G] to compute the replacement-cost estimate with the building's correct square footage once it had this figure." (*Id.*) Plaintiff contends that USF&G previously recalculated the replacement value on May 29, 2004, November 23, 2004, and December 27, 2004, when the square footage and building type had not changed, yet USF&G failed to recalculate the replacement value in February 2005, after receiving the results of the ISO report which reflected a significant increase in square footage. (*Id.*) (citing Exhibits 2-4 to the Theisman Deposition). Tropland emphasizes that a report using the correct data was not run at the time USF&G first received the ISO report with the new information; rather, a report using the correct data was run by Beth Theisman on November 1, 2007 at her deposition. (*Id.*) According to Tropland, had the correct information been entered into the software, it would have yielded a value of $1,459,860, which Plaintiff submits is 25% higher than the policy limit of $1,166,900 derived from the 15,900 square foot measure. (*Id.* at p. 3). As such, the difference between the estimates is $292,870. (*Id.* at p. 4).

In addition, Plaintiff cites the deposition of Beth Theisman, underwriting director at USF&G, in which she acknowledges that she would have run an ITV if confronted with the difference in square footage and construction involved in this matter. (Def. Exh A, p. 57:9-25). Further,

Theisman stated that in instructing other underwriters, she would advise trainees to run an ITV if faced with differences in values such as these. (*Id*. at p. 58:25-59:3).

Moreover, Plaintiff charges that once Defendant undertook to assist Tropland in estimating the replacement cost, thereby assuming a duty, it was incumbent on USF&G to discharge this obligation responsibly. (Pla. Mem. in Opp. p. 7). In addition, Tropland argues that USF&G assumed duties of an agent toward Tropland.

### *2.     Defendant*

In responding to Plaintiff's allegations, USF&G explains its internal procedures to the Court, citing the deposition of Ms. Theisman to support its assertions. According to USF&G, its internal procedures dictate that a policy is issued with the value provided on the application of insurance submitted by the agent. (Def. Repl. Mem. p. 2) (citing Def. Exh. A, Deposition of Beth Theisman p. 10). The accuracy of the agent's information is then checked through USF&G's internal storage system, "The Foundation System," by accessing the Marshall/Swift and Boeck system, an estimating system used for the purpose of estimating the replacement cost of the property, or ITV (insurance to value). (*Id.*) (citing Def. Exh. A, p. 26-27). USF&G explains that an ITV is an "estimate using limited data to confirm that the value provided by the agent is reasonable." (*Id.*) (citing Def. Exh. A, p. 33-35). USF&G clarifies that while "[g]enerally [it] relies upon the accuracy of the information of the agent", "if there is a gross discrepancy between the value provided by the agent and the ITV, USF&G would go back to the agent to resolve the discrepancy." (*Id.* at p. 2-3) (citing Def. Exh. A, p. 35-37). The "general rule of thumb" is that an ITV should be within plus or minus 20% of the policy stated value, although "[t]his is not a black and white line." (*Id.* at p. 3) (citing

Def. Exh. A, p. 35).

At the time material to this dispute, USF&G alleges that its internal procedures required that an ISO[1] report be ordered every three years for properties exceeding $500,000 in value. (*Id.*) St. Paul requested an ISO for the Tropland property in December 2004. (*Id.*) (citing Def. Exh. A, p. 43). The ISO report was received on February 16, 2005, which USF&G submits was two weeks after the February 2, 2005 renewal of the 2005-2006 policy. (*Id.*) (citing Def. Exh. A, Deposition of Beth Theisman, Exhibit P-8). USF&G acknowledges that the ISO report revealed discrepancies in square footage and type of building construction. (*Id.*) (citing Def. Exh. A. p. 56-58). Defendant specifies that the information the agent originally provided showed that the building was 15,900 square feet and of fire resistant construction, whereas the ISO report indicated that the building was 23,376 square feet with construction of non-combustible material. (*Id.* at p. 3 n. 15). However, USF&G contends that the "discrepancies tended to offset each other in determining replacement cost," adding that an ITV run using the increased square footage and correct building construction "would have revealed a deviation of -20.06%, which is within the plus or minus (+/-) 20% rule of thumb, and was therefore, acceptable." (*Id.*) (citing Def. Exh. A, Deposition of Beth Theisman, Exh. P-6).

Defendant reiterates that the policy terms and conditions for the 2005-2006 policy period had already been established and accepted by the agent and the insured. (Def. Repl. Mem. p. 3-4) (citing Def. Exh. A p. 58). Based on the foregoing, Defendant explains that "because the ITV was only an

---

[1] Defendant describes an ISO as "an independent service that performs inspections of the property . . . (which) is used to confirm information the insurance company already has and pick up information that they don't have." (Def. Repl. Mem. p. 3 n. 13).

7

estimate and it was within the plus or minus (+/-) 20% rule of thumb, according to USF&G's internal procedures, there was no reason to send the ITV to the insured or to effect any changes on the policy." (Def. Repl. Mem. p. 4) (citing Def. Exh. A p. 60).

### B.     *Law and Analysis*

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The Court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

There are two issues in this motion for partial summary judgment: (1) whether USF&G had

a duty to recalculate the replacement cost value of the property, and (2) whether USF&G had a duty to notify Tropland once it discovered the calculation error.

According to the Louisiana Supreme Court, "[g]enerally, a duty is defined as the obligation to conform to the standard of conduct associated with reasonable men in like circumstances." *Fox v. Board of Supervisors*, 576 So.2d 978, 981 (La. 1991). "Whether a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties." *Id.* (citing *Seals v. Morris*, 410 So.2d 715, 718 (La. 1981), on rehearing 410 So.2d 717 (La. 1982); *Straley v. Calongne Drayage & Storage, Inc.*, 346 So.2d 171 (La. 1977)).

Tropland does not rely on the insurance policy in charging that USF&G owed it a duty. Rather, Tropland seeks to impose a duty on USF&G outside the four corners of the insurance policy. While the Court agrees with Defendant that the cases cited by Plaintiff are distinguishable from the present matter, the cases illustrate that such a duty may be imposed upon an insurer depending upon the unique facts and circumstances involved. *See, e.g., Earl Williams Constr. Co., Inc. v. Thornton & Brooks, Inc.*, 501 So.2d 1037 (La. App. 2 Cir. 1987); *Mauroner v. Massachusetts Indem. & Life Ins. Co.*, 520 So.2d 451 (La. App. 5 Cir. 1988).

In the present case, the Court notes that an ITV was not run by an USF&G employee at the time the discrepancies in square footage and type of building construction were revealed. Moreover, when Ms. Theisman ran an ITV using the correct data, it yielded a deviation of -20.06%, which the Court notes is at the outer limit of the acceptable "general rule of thumb" range.

Having reviewed the arguments presented by the parties, the Court finds that there is a genuine issue as to whether the facts of this case gave rise to a duty on behalf of USF&G to either

recalculate the replacement value once it noticed the difference in value, or to alert Tropland of the measurement error once the discrepancy came to the insurer's attention. As such, summary judgment is inappropriate based on the facts before the Court at this time.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that **Defendant's Motion for Partial Summary Judgment (Rec. Doc. 19)** filed by United States Fidelity & Guaranty Company is **DENIED.**

April 17, 2008

                              _____
                              JAY C. ZAINEY
                              UNITED STATES DISTRICT JUDGE